# CRAVATH

Kathleen E. Young
keyoung@cravath.com
T+1-212-474-1525
New York

April 28, 2023

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Centre Street, Courtroom 1106
New York, NY 10601

Re: *Mitsugi v. Jung*, 1:22-cv-08025-LGS

Dear Judge Schofield:

    We represent Respondent Eunji Jung in the above-referenced action.  We write, pursuant to Part III.A.1. of Your Honor's Individual Rules of Practice and the Court Orders, dated March 13, 2023 (Dkt. No. 46) and April 11, 2023 (Dkt. No. 57), to request leave to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  As discussed more fully herein, Petitioner cannot raise a triable issue as to his purported rights of custody under the Hague Convention on Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention") necessary to support a *prima facie* claim.  Accordingly, this dispute involves a narrow issue of law amenable to decision on summary judgment.

    In early 2020, Respondent initiated divorce proceedings, in which the parties both sought custody of their children during their period of separation and prior to divorce.  On August 13, 2020, Respondent was appointed the custodian of the children pursuant to an agreement (the "Mediation Agreement") reached before a panel of the Chiba Family Court in Japan.  (*See* Dkt. No. 53.7 ¶ 1.)  The Mediation Agreement also provided that Petitioner could visit the children, with the parties mutually agreeing to the frequency, time and location of such visitation.  (*See id.* ¶ 3.)  From August 2020 through December 2021, the children lived with Respondent, who acted as their sole caregiver, and Petitioner periodically visited the children.  In late 2021, Respondent informed Petitioner she planned to leave Japan with the children, and in December 2021, she did so over Petitioner's objection.  (*See* Dkt. No. 54 ¶¶ 23-24.)

    Petitioner initiated this action, and, on September 29, 2022, filed an Amended Verified Petition seeking return of the parties' children (the "Petition").  After months of discovery that included fact and expert depositions, exchanging hundreds of pages of documents, interrogatories, requests for admission and the parties' experts preparing a joint expert report (*see* Dkt. No. 54), Petitioner cannot raise a triable issue of fact to support his Petition.

**NEW YORK**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

A petitioner seeking return of a child under Article III of the Hague Convention must establish that "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter v. Gitter*, 396 F.3d 124, 130-31 (2d Cir. 2005). Importantly, Petitioner bears the burden of proving his case by a preponderance of the evidence. *Id.* He cannot do so, particularly with respect to element (2), and Respondent is therefore entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a).

To prevail, Petitioner must establish that Respondent wrongfully removed the children from Japan. Removal is only "wrongful" under the Hauge Convention when it violates the petitioning parent's "rights of custody". *Abbott v. Abbott,* 560 U.S. 1, 8 (2010). This case therefore turns on whether Petitioner had any rights of custody at the time of the children's departure from Japan. The Convention defines "rights of custody" to include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence". *Id.* (quoting Hague Convention art. 5(a).) Whether certain rights constitute rights of custody under the Hague Convention depends upon each country's domestic laws, court decisions concerning custody of the child and agreements between the parents relating to those rights. *See* Hague Convention, art. 3. Here, because the children were habitually resident in Japan at the time of their removal, Japanese law "determine[s] the content of [Petitioner's] right[s]". *Abbott*, 560 U.S. at 10. Similarly, because the Mediation Agreement governs their custody arrangement during the period of the parties' separation, that agreement, "as interpreted under Japanese law", also defines the contours of Petitioner's rights. *Ogawa v. Kang*, 946 F.3d 1176, 1180 (10th Cir. 2020).

Under Japanese law, only one parent can be designated as the custodian (*kango-sha*) of a child during the period of the parents' separation and prior to their divorce. (*See* Dkt. No. 54 at 5.) The parties' experts agree that only Respondent was designated the custodian of the children (the *kango-sha*). (*See id.* at 4, 5, 8.) The parties' experts also agree that the "parent with custody rights (*kangoken*)"—here, Respondent—has "the rights and duties set forth in Articles 820 [of the Japanese Civil Code] (care and education), 821 (*determination of residence*), 822 (discipline), and 823 (permission for occupation)". (*Id.* at 8 (emphasis added).) As such, Respondent had the authority to determine the children's place of residence, which constitutes a right of custody under the Convention.

Petitioner, by contrast, had no rights of custody under Japanese law or by agreement. While Petitioner could visit the children pursuant to the Mediation Agreement, with the parties negotiating the terms of Petitioner's visitation (Dkt. No. 53.7 ¶ 3), the opinions of the experts diverge regarding whether Petitioner was entitled to visitation as a "right". Petitioner's expert claims that following the Mediation Agreement, the parties agreed that Petitioner would have visitation twice a month, in person, in Japan[1] and that removing the children from Japan deprived Petitioner of in-person visitation, necessarily breaching his visitation rights. (*See* Dkt. No. 54 at 14.)

---

[1] Respondent denies that the parties ever agreed that visitation would take place in-person in Japan twice a month. Notably, Petitioner's expert cites no support for this claim and assumes the parties agreed to these visitation terms despite admitting at his deposition that the Petitioner failed to provide the documentary evidence of this agreement he claimed existed.

2

Under Japanese law, visitation is not a right. Even assuming that the parties agreed to visitation in Japan, a Japanese court would not enforce any visitation right. (*See id.* at 25-26.) Importantly, agreements must "hav[e] *legal effect under the law*" of the state of habitual residence to form a "right of custody". Hague Convention, art. 3 (emphasis added). Petitioner's own expert concedes that an agreement for visitation is not enforceable under Japanese law. (*See* Dkt. No. 54 at 16.) *Cf. In re Application of Ariel Adan*, 437 F.3d 381, 393 (3d Cir. 2006) (concluding when the parties did not provide evidence of the "enforceability of such [custody] agreements", the court had "insufficient information to conclude whether the agreement had 'legal effect under the law of [Argentina],' as required by Article 3 of the Convention)"); *abrogated on other grounds by Golan v. Saada*, 142 S. Ct. 1880 (2022). As such, Petitioner's reliance on an alleged visitation agreement is misplaced.

Petitioner also argues he has an implied right to object to the children's place of residence if it would deprive him of in-person visitation. (*See* Dkt. No. 54 at 20.) This cannot be credited when Petitioner's expert acknowledges that his opinion is not the "prevailing opinion" among Japanese law scholars (*see id.* at 10), and indeed, admitted at his deposition that Petitioner's own Japanese counsel disagrees that Petitioner has such a right.

Moreover, this allegedly implied right ultimately relies upon a right to visitation that is not a right of custody as defined by the Hague Convention. *See Abbott*, 560 U.S. at 6-9 (finding that "direct and regular visitation rights", are recognized as "rights of access", but do not offer "a return remedy" under the Convention). As the Supreme Court made clear in *Abbott*, "[f]or those removals that frustrate a noncustodial parent's 'rights of access'"—just as Petitioner complains Respondent's removal of the children here has interfered with his right to visitation— the noncustodial parent "may not force the child's return". *Id.* at 25.[2] Thus, "even if the [Mediation Agreement] gave [Petitioner] some rights", Petitioner "must nevertheless demonstrate those rights are rights of custody as defined by the Convention", and Petitioner has failed to do so here. *Ogawa*, 946 F.3d at 1182 & n.3 (concluding Japanese Petitioner who had "the right to visit the [children] once per year and to communicate with [them]" failed to "carr[y] his burden to show, by a preponderance of the evidence, that he ha[d] rights of custody").

Because the Petitioner had no rights of custody when Respondent removed the children from Japan, Petitioner has no *prima facie* case under the Hague Convention. As such, Respondent respectfully requests leave to file a motion for summary judgment.

---

[2] While the Supreme Court has recognized that "*ne exeat* rights—meaning joint rights to determine a child's country of residence—constitute custody rights under the Hague Convention", Petitioner does not allege that he has any such *ne exeat* rights. *Lukic v. Elezovic*, No. 20CV3110ARRLB, 2021 WL 466029, at *6 (E.D.N.Y. Feb. 9, 2021). Moreover, even if one viewed Petitioner's alleged "right to consent or object to determination of residence of the child" (Dkt. No. 54 at 19) as a *ne exeat* right, only "where the law of the country of residence *explicitly* requires a parent to give consent before removing the child, [does] a custodial right exist". *Radu v. Toader*, 805 F. Supp. 2d 1, 9 (E.D.N.Y. 2011), *aff'd*, 463 F. App'x 29 (2d Cir. 2012). Thus, "visitation rights or 'rights of access' alone", without an *explicit* grant that a parent has to consent before a child is moved, "[do] not amount to a *ne exeat* right". *Id.* Here, there was a custodial determination in favor of Respondent, that "did not award any custodial rights to petitioner, and was silent as to petitioner's *ne exeat* rights". *Id.* at *11. Mr. Mitsugi cannot point to any evidence—from the Mediation Agreement or anywhere in Japanese law—that contains an explicit *ne exeat* right.

Respectfully,

*/s/ Kathleen E. Young*

Kathleen E. Young

The Honorable Lorna Schofield
   Southern District of New York
      United States Courthouse
         40 Centre Street, Courtroom 1106
           New York, NY 10601
VIA ECF

Copies to:

Counsel of Record

VIA ECF