# Arnold & Porter

May 5, 2023

**VIA ECF**

The Honorable Lorna Schofield
United State District Judge
Southern District of New York
40 Foley Square, Courtroom 1106
New York, NY 10007

      Re:    *Mitsugi v. Jung*, 1:22-cv-08025-LGS

Dear Judge Schofield:

      We respectfully submit this response to Respondent's April 28, 2023 pre-motion letter. Dkt. No. 61 ("Resp. Letter"). The parties agree that the sole issue before this Court is whether Respondent's removal of the Children to the United States breached Petitioner's custody rights under Japanese law—and thus, breached his "rights of custody" under the Hague Convention. *See id.* ("This case therefore turns on whether Petitioner had any rights of custody at the time of the children's departure from Japan."). Because this is a question of law, and because there are no contested issues of material fact, this case should be resolved through motions for summary judgment.

      Petitioner will be able to establish two rights to custody under Japanese law. First, because the parties are not yet divorced, the parties share *shinken* – or parental authority – including the right to determine the residence of the child. Second, under the Mediation Agreement, the Petitioner had *menkai-kōryūken* – or the right to visitation, which was violated when the Respondent unilaterally removed the Children from Japan.

      **1)** Under the Japanese Civil Code, *shinken* is shared by the parents until divorce is final. Joint Expert Report, Dkt. No. 54 at 5. *Shinken* includes, among other things, the right to determine the residence of a child. *See* Arts. 820-22 of the Japanese Civil Code.

      The Respondent asserts that the Mediation Agreement terminated the Petitioner's custody right. *See* Resp. Letter at 2 (asserting that because Respondent was designated in the Mediation Agreement as the *kango-sha*, Petitioner "had no rights of custody under Japanese law or by agreement"). But the Mediation Agreement is only a *temporary* arrangement to be followed during the period between separation and divorce. *See* Joint Expert Report at 5. The designation of the Respondent as the *kango-sha* in that agreement did not cause the Petitioner to lose his *shinken* custody rights. *Accord Poix v. Susibel Altagracia Espaillat Santana*, 2022 WL 9847347, at *7-8 (S.D.N.Y. Oct. 17, 2022) ("[A]n award of temporary guardianship to one parent does not constitute an order terminating the other's parental authority."). Therefore, Petitioner and Respondent still share *shinken*, including the right to determine the Children's residence.

**Arnold & Porter**

For this reason, Respondent's reliance on *Ogawa v. Kang*, 946 F.3d. 1176 (10th Cir. 2020), is misplaced. The parties there entered into a *final* divorce agreement, under which the parties agreed that the mother would have sole parental authority over the children. *Id.* at 1178. By contrast, there is no final divorce agreement here. As Japan's Supreme Court explained, in a case where the parties remain married, those with *shinken* retain the right to take care of and educate the children – and "it shall be a part of taking care and education that the parent who is not living with the child visits the child." Joint Expert Report, Ex. 14 (Saikō Saibansho [Sup.Ct.] May 1, 2000, Hei 12 (kyo) no.5, 54(5) Saikō Saibansho minji hanreishū [Minshū], 1607 (Japan)). In this way, the Japanese court recognized that visitation rights were part of *shinken* (and *kangoken*) for parents who, as in this case, are separated but remain married.

Respondent also cites to *Abbott v. Abbott*, 560 U.S. 1 (2010) and *Radu v. Toader*, 805 F. Supp. 2d 1 (E.D.N.Y. 2011), *aff'd*, 463 F. App'x 29 (2d Cir. 2012), but those cases are inapposite. While *Abbott* concerned *ne exeat* rights – *i.e.*, the right to give or withhold consent before a parent can remove a child from the country – the court *did not* hold that explicit *ne exeat* rights were the *only* rights to custody. Rather, *Abbott* directs courts to examine the law of the foreign country and the content of the rights at issue in determining whether petitioners possessed custody rights under the Hague Convention. *Id.* at 10. In other words, the analysis of foreign law should be performed case by case. "Rights of custody" in the Hague Convention context "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 5(a). Under Japanese law, *shinken* includes the right to determine the child's place of residence, and thus constitutes a right to custody under the Convention.

**2)** Petitioner also had visitation rights (*menkai-kōryūken*) under the Mediation Agreement, which the Petitioner exercised before the Children were unilaterally removed from Japan. While the Respondent now appears to deny the existence of an agreement concerning visitatation, *see* Resp. Letter at 2, n.1, the Respondent produced emails in discovery, which establish that the parties arranged for monthly visits before the Respondent moved the Children to the United States.[1] In any event, there is no factual dispute that the Mediation Agreement gave the Petitioner visitation rights, and that the Petitioner exercised those rights by routinely arranging to visit the Children.

Respondent also incorrectly argues that visitation rights are not enforceable under Japanese law. *See* Resp. Letter at 3. In fact, visitation rights are enforceable under Article 172(1) of the Civil Execution Act, and interference with such rights can result in legal sanctions. Joint Expert Report, 16 and Ex. B (Saikō Saibansho [Sup.Ct.] Mar. 28, 2013, Hei 24 (kyo) no.48, 67(3) Saikō Saibansho minji hanreishū [Minshū], 864 (Japan)). A

---

[1] Courts in the United States have similarly prohibited one parent from moving children to another state when such a move interfered with the other parent's visitation rights. *See, e.g.*, *In re Marriage of Meier*, 286 Or. 437 (Or. 1979) (Oregon to Ontario); *Russenberger v. Russenberger*, 661 So. 2d 825 (Fl. 1996) (Florida to New York); *Maeda v. Maeda*, 8 Haw. App 139 (Haw. 1990) (Hawaii to the mainland).

2

# Arnold & Porter

parent may, for instance, raise a claim under Japanese law for emotional damages against the other parent if they are prevented from seeing their children. *See e.g.* Joint Expert Report Exs. C and D. Accordingly, an agreement regarding visitation does, for purposes of the Hague Convention, have "legal effect under the law of [Japan]". *See* Hague Convention, art. 3.

Anther case cited by the Respondent, *In re Application of Ariel Adan*, 437 F.3d 381 (3d Cir. 2006), is distinguishable. There, the court held that it had "insufficient information to conclude whether the agreement had 'legal effect under the law of [Argentina]'" where the parties had an informal agreement with unclear terms, and the parties failed to show that their agreement was properly memorialized under Argentine law. 437 F.3d at 393. By contrast, the parties, here, entered into the Mediation Agreement before the Chiba Family Court, pursuant to Article 766(1) of the Japanese Civil Code, and then agreed, using clear terms, that the Petitioner would have the right to visitation. *See* Joint Expert Report, Exs. 7, 8 (Mediation Agreement in Japanese and English). Petitioner will therefore be able to show that his right to visitation was enforceable and had "legal effect" under Japanese law.

Finally, Respondent claims that Petitioner's expert witness, Mr. Haraguchi, acknowledged that his "opinion is not the 'prevailing opinion' among Japanese law scholars." *See* Resp. Letter at 3. This is inaccurate. Mr. Haraguchi explained in his expert report that there is no direct precedent in Japan to these unique facts. Joint Expert Report at 10. Nonetheless, as Mr. Haraguchi explained, it is "common sense" among Japanese practitioners that the Petitioner would have the right to object to Respondent's unilateral removal of the Children to the United States, since this removal breached his right to visit his children in person. Haraguchi Dep. Tr. at 158:17-20. Moreover, as stated above, Japan's Supreme Court has held that *kangoken* includes "that the parent who is not living with the child *visits the child*." Joint Expert Report, Ex. 14 (emphasis added). This custody right, held by the Petitioner, was plainly breached once the Respondent unilaterally removed the Children to the United States.

For the above stated reasons, Petitioner respectfully requests leave to file a motion for summary judgment.

Respectfully submitted,

By: *[signature]*
Imani C. Tisdale
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710

cc: All counsel of record (via ECF)