# CRAVATH

Kathleen E. Young
keyoung@cravath.com
T+1-212-474-1525
New York

May 5, 2023

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Centre Street, Courtroom 1106
New York, NY 10601

                          Re: *Mitsugi v. Jung*, 1:22-cv-08025-LGS

Dear Judge Schofield:

        We represent Respondent Eunji Jung in the above-referenced action. We write, pursuant to the Court's May 1, 2023 Order (Dkt. No. 62) and Part III.A.1. of Your Honor's Individual Rules of Practice to oppose Petitioner's pre-motion letter for summary judgment ("Petitioner's Letter" or "Letter"), dated April 28, 2023. (Dkt. No. 59.) While Respondent agrees that this dispute is amendable to dismissal on summary judgment, the Court should deny Petitioner's request to file a motion seeking an affirmative ruling in his favor at this stage of the proceedings. As set forth in Respondent's pre-motion letter (Dkt. No. 60) ("Respondent's Letter"), Petitioner cannot raise even a triable issue as to his purported custody rights under the Hague Convention, let alone prove his case on the evidence adduced to date, especially because Respondent has yet to present her defenses. *See* 22 U.S.C. § 9003(e)(1)(A).

        *First*, Petitioner argues that he will be able to establish "as a matter of law, a *prima facie* case" because, *inter alia*, Respondent's removal of the children from Japan "breach[ed] . . . Petitioner's custody rights". (Letter at 1-2.) As discussed in Respondent's Letter, however, Petitioner simply has no rights of custody for Respondent to breach. (Respondent's Letter at 2-3.)[1] Petitioner also argues that because he had "visitation rights", "both parties maintained the right to determine the residence of the Children" during the period of the parties' separation. (Letter at 3.) This argument also fails as a matter of law.

        Under Japanese law, only Respondent had the right to determine the children's place of residence during the parties' separation. While "both parents still have parental authority (*shinken*)" until divorce, during the period of separation prior to divorce, only one parent is designated the custodian (or *kangosha*) of the children.[2] (*See*

---

[1] Because Petitioner had no rights of custody, Petitioner cannot establish that he was *exercising* rights of custody at the time of removal, necessary to establish the third element of his *prima facie* case. *See Gitter v. Gitter*, 396 F.3d 124, 130-31 (2d Cir. 2005).

[2] During this period, *kangoken* rights, akin to "physical custody" in the U.S., are separated out from *shinken* and include the right to determine the residence of the children. (Dkt. No. 54 at 22-23.) The noncustodial parent only

Dkt. No. 54 at 4, 5, 8.)  That is what occurred here; in June 2020, family court investigators in Japan conducted an investigation and rendered a report recommending that Respondent be appointed custodian (*kango-sha*).  (*See id.* at 3-4 (*citing* Dkt. No. 51-1).)  Consistent with this recommendation, the parties agreed before a panel of the Chiba Family Court in Japan that Respondent—and only Respondent—would be the custodian (*kango-sha*) during the period of separation and prior to the parties' divorce.  The parties do not dispute this, nor do they dispute that, as the *kango-sha* with custody rights (*kangoken*), Respondent had the right to determine the children's place of residence.  (*See* Dkt. No. 54 at 4, 5, 8 (*citing* Article 821 of the Japanese Civil Code).)[3]

Petitioner attempts to confuse the issue by suggesting that because the parties share *shinken* and "*[k]angoken* falls under the umbrella of *shinken*", he maintains *kangoken* rights.  (Letter at 2-3.)  However, Petitioner is not the *kango-sha* and therefore has no custody rights (*kangoken*).  That is why Petitioner's expert refers to him as the "*hi-kangosha*" (meaning "***not*** *kangosha*").  (*See* Dkt. No. 54 at 17, 22 n.30.)  Even if Petitioner retained limited *shinken* rights (*see* n.2), he does not have any *kangoken* rights.  Nor does Petitioner allege the parties otherwise agreed that Petitioner would have the particular *kangoken* right to determine the children's place of residence.  *See Ogawa v. Kang*, No. 2:18CV335DAK, 2018 WL 2376338, at *3 (D. Utah May 24, 2018) (holding that Petitioner failed to establish rights of custody under Japanese law and reasoning that, while the parties' "agreement demonstrate[s] that the parties contemplated that [Petitioner] would have some limited physical custody of the children", "there [was] no provision in the agreement that grant[ed] [Petitioner] the right to determine physical custody of the children and no provision granting his physical custody of the children"), *aff'd sub nom. Ogawa v. Kang*, 946 F.3d 1176 (10th Cir. 2020).

Petitioner does not claim that he has an affirmative right to determine the children's place of residence (a right he concedes the Respondent as *kangosha* possesses).  Instead, Petitioner strains to argue that visitation grants him an implied right to consent or object to the place of residence determined by the Respondent.  Petitioner's only support for this is an opinion from his expert, who admitted that his views are not "prevailing" under Japanese law.[4]  (*See* Dkt. No. 54 at 10.)  Petitioner's expert also admitted in deposition that his published writings on Japanese family law—including articles authored this year—directly conflict with portions of his expert report.  Further, Petitioner's expert agrees that visitation is not an enforceable right, meaning it would not

---

retains the legal aspects of *shinken*, such as the right to administer the children's property or finances and, notably, not the right to determine the children's place of residence.  (*Id.*)

[3] The fact that the parties' divorce has not been finalized has no impact on the current custodial arrangement or the parties' custodial rights at the time of the children's removal.  While both parents share parental authority (*shinken*), only Respondent has been appointed custodian holding the bundle of *kangoken* rights, including the right to determine the children's place of residence.

[4] Petitioner's expert argues this case presents a unique fact pattern never before confronted by Japanese law.  It is impossible to believe that, in Japan, there has never been a dispute about visitation when a parent with custody moved away from the noncustodial parent during their separation.  Moreover, Petitioner's expert's admission that Petitioner's own Japanese counsel believes Respondent could remove the children from Japan over Petitioner's objection belies the claim that these issues have never been addressed in Japan.  Indeed, Petitioner's expert previously opined on the likely outcome under Japanese law in a factually analogous hypothetical scenario.  (*See* Dkt. No. 53-12.)

have "legal effect under [Japanese] law" as Article 3 requires.  (*Id.* at 16; *see* Respondent's Letter at 2.)  Accordingly, the disputed factual issue of whether the parties reached a specific agreement on visitation—which they did not, and Petitioner has adduced no evidence to the contrary—does not impact the outcome here.  And indeed, Article 3 of the Hague Convention does not provide a remedy of return for visitation.  (Respondent's Letter at 3.)

*Second*, even if Petitioner could establish a *prima facie* case under the Convention—which he cannot—Respondent can still rely upon defenses, including the grave risk defense.  For this reason, even if the Court granted Petitioner's request, and ultimately his motion for summary judgment, it would not dispose of the case.  Instead, the burden would shift to Respondent to assert her affirmative defenses.  *See Blondin v.Dubois,* 189 F.3d 240, 245 (2d Cir. 1999).  Petitioner offers no support for his conclusory claim that Respondent "cannot establish the existence of any applicable exception" under the Hague Convention.  (Letter at 1.)  Granting summary judgment on this basis would be inappropriate and premature when Respondent has yet to present the defenses she has indicated she intends to invoke. (*See* Dkt. Nos. 34 at 2, 47 at 3 n.1.)

Among the affirmative defenses against the return of a child is the grave risk defense, which a respondent can qualify for by establishing, by clear and convincing evidence, that there is a grave risk the child's return would expose the child to physical or psychological harm.  *See*, *e.g.*, *Elyashiv v. Elyashiv*, 353 F. Supp. 2d 394, 403 (E.D.N.Y. 2005).  Courts have precluded the return of children under this exception when the child experienced physical abuse from the petitioner, and courts have also "recognized that a child's observation of spousal abuse is relevant to the grave-risk inquiry . . . because of the potential that the abuser will also abuse the child".  *Id.* at 408-409 (internal citations and quotations omitted) (denying petition and noting that "[e]ven though [the child] has yet to be physically abused by her father . . . she is not insulated from the likelihood of future abuse, given [father's] inability to control his temper [and] his pattern of domestic abuse").  Additionally, removing a child deeply rooted in their new home can present a grave risk that return would expose them to psychological harm.  *See Blondin,* 189 F.3d at 248.

During discovery, Respondent adduced evidence to support her grave-risk defense, including medical records documenting Petitioner's abuse.  She also provided a report from an expert psychologist who examined the Respondent and the children, and solicited testimony from Petitioner regarding his abuse.  Indeed, Respondent's expert characterized Petitioner's abuse as "severe" and "life threatening".  Petitioner also admitted in his deposition to being physically violent with Respondent and that their children witnessed his abuse.  This evidence, at a minimum, raises a triable issue in defense of Petitioner's claim.

Because Petitioner cannot meet his burden to show that "as a matter of law" he had rights of custody, and because Respondent has yet to assert her defenses under the Convention, the Court should deny Petitioner's request to file a motion for summary judgement.  In the event the Court grants the Petitioner's request, however, Petitioner should only be permitted to file a partial motion for summary judgment.

4

Respectfully,

*/s/ Kathleen E. Young*

Kathleen E. Young

The Honorable Lorna Schofield
   Southern District of New York
      United States Courthouse
         40 Centre Street, Courtroom 1106
           New York, NY 10601
VIA ECF
Copies to:
Counsel of Record

VIA ECF